UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

05 10073 MLW

DIANE F WALLACE,                                    CA:
        Plaintiff

                                                   MJ Rein

v.

EMPIRE HYUNDAI, INC.
HSBC AUTO FINANCE INC. F/K/A
HOUSEHOLD AUTOMOTIVE FINANCE CORPORATION,
WELLS FARGO FINANCIAL ACCEPTANCE, INC.,
LONG BEACH ACCEPTANCE CORP. AND          RECEIPT #_____
ONYX ACCEPTANCE CORPORATION              AMOUNT $ 150
                                         SUMMONS ISSUED__yes__
                                         LOCAL RULE 4.1_____
                                         WAIVER FORM_____
        Defendants.                      MCF ISSUED_____
                                         BY DPTY CLK_____
                        COMPLAINT        DATE__1\11\05_____

        COMES NOW the Plaintiff, DIANE F. WALLACE, (hereafter the "Plaintiff") by

counsel, and for her complaint against the Defendants, alleges as follows:

                            **INTRODUCTION**

1.  This case is brought under two federal laws: the Equal Credit Opportunity Act, 15 U.S.C.

    §1691, et seq. (ECOA) and the Fair Credit Reporting Act, 15 U.S.C. §1681, et seq. (FCRA).

    Both of these laws regulate what a creditor must do when it accepts a consumer's application

    for credit and acts upon it. Under both statutes, a creditor who takes an adverse action must

    provide a written notice of that action together with specific disclosures required by each

    law. None of the defendants provided this important and legally mandated notice. The

    Plaintiff also raises supplemental state law claims for conversion, fraud and breach of

    contract as well as statutory violations of the Massachusetts Credit Cost Disclosure Act,

                                        1

M.G.L. ch. 140D, § 1 et seq. ("MCCCDA"), the Massachusetts Repossession Regulation

Act, M.G.L. ch. 255B, § 20A (the "Foreclosure Act"), and the Massachusetts Consumer

Protection Act, M.G.L. ch. 93A ("93A"), and violations of the UCC article 9 as contained in

M.G.L. ch. 106, Part 6 .

## JURISDICTION

2.  Jurisdiction is proper pursuant to the ECOA, 15 U.S.C. §1640 and §1681e(f) and the FCRA 15

U.S.C. §1681n and 1681o.  Supplemental jurisdiction is proper pursuant to 28 U.S.C. §1367.

This Court has venue as the Plaintiff traveled to Fall River, Massachusetts to purchase the

vehicle from Defendant Empire Hyundai which has its principal place of business in resides in

Fall River, Massachusetts and all of the causes of actions emanated from the transaction that

occurred there.  Further, each of the Defendants has Registered Agents within the state of

Massachusetts.

## PARTIES

3.  The Plaintiff is an individual with a residence at 161 Courtney Avenue in Pawtucket, Rhode

Island and a consumer as defined by the ECOA and the FCRA.

4.  Defendant HSBC AUTO FINANCE INC., f/k/a Household Automotive Finance Corporation

("Household") is a Delaware corporation doing multi-state business in automobile financing

with CT Corporation System at 101 Federal Street in Boston, Massachusetts listed with the

Massachusetts Secretary of State as its registered agent.  At all times relevant hereto it was a

"creditor" as governed and defined by ECOA, 15 U.S.C. §1691a(e).

5.  Defendant Wells Fargo Financial Acceptance, Inc. is a subsidiary of Wells Fargo & Company

doing financing business in thirty three states with Corporation Service Company at 84 State

Street in Boston, Massachusetts listed with the Massachusetts Secretary of State as its registered

agent. At all times relevant hereto it was a "creditor" as governed and defined by ECOA, 15

U.S.C. §1691a(e).

6. Defendant Long Beach Acceptance Corp. is a Delaware corporation, engaged in automobile

financing with National Registered Agents, Inc. at 303 Congress Street, 2nd Floor, Boston,

Massachusetts listed with the Massachusetts Secretary of State as its registered agent. At all

times relevant hereto it was a "creditor" as governed and defined by ECOA, 15 U.S.C.

§1691a(e).

7. Defendant Onyx Acceptance Corporation is a Delaware corporation engaged in automobile

financing with Corporation Service Company at 84 State Street in Boston, MA listed with the

Massachusetts Secretary of State as its registered agent. At all times relevant hereto it was a

"creditor" as governed and defined by ECOA, 15 U.S.C. §1691a(e).

8. Defendant Empire Hyundai, Inc. ("Empire")is a Massachusetts corporation engaged in

automobile financing with its principal place of business at 428 Pleasant Street, Fall River, MA.

At all times relevant hereto it was a "creditor" as governed and defined by ECOA, 15 U.S.C.

§1691a(e).

## **FACTUAL PREAMBLE**

9. This case arises from an increasingly common practice in the retail automobile sales industry

called "a yo-yo sale" or "spot delivery". Using this practice the dealer target advertises poor

credit consumers and promises to sell them an automobile "on the spot". The consumer goes to

the dealership, negotiates a sale, signs all paperwork, receives a certificate of ownership,

temporary or transferred tags, and takes possession of the automobile all in the same day. The

3

consumer leaves the dealership believing they own the automobile. The sale is financed by the dealer (as the creditor) on a Retail Installment Sales Contract. As in the present case, only after the sale is "completed" in the consumer's mind does the dealer then attempt to sell or assign this installment contract to a third party automobile finance company. If the dealer is unable to get one of the many automobile finance companies to purchase the Contract, the dealer then attempts to "undo" or cancel the sale, and yanks the automobile back from the buyer. As in the present case, the dealer generally repossesses the automobile from the consumer, fails to return any down payment (here $500) and fails to return any trade-in (here listed as $1400 on the contract). These practices violate the Federal Equal Credit Opportunity Act ("ECOA") and the Federal Fair Credit Reporting Act ("FCRA") as well as the Massachusetts Credit Cost Disclosure Act, M.G.L. ch. 140D, § 1 et seq. ("MCCCDA"), the Massachusetts Repossession Regulation Act, M.G.L. ch. 255B, § 20A (the "Foreclosure Act"), the Massachusetts Consumer Protection Act, M.G.L. ch. 93A ("93A"), violates UCC article 9 as contained in M.G.L. ch. 106, Part 6 and constitutes the state law torts of conversion and fraud. In the alternative, Plaintiff also pleads breach of contract.

## FACTUAL ALLEGATIONS

10. On or about January 13, 2003 Plaintiff Diane Wallace, in response to an advertisement by Empire Hyundai that they could finance automobile purchases for those with "bad credit", visited Empire's located at 428 Pleasant Street in Fall River, Massachusetts in order to purchase a vehicle for her personal, family and household use.

11. Plaintiff had discussions on January 13, 2003 with a sales representative at Empire and told him that she doubted her credit application would be approved but he told her that they handled it

4

"in-house." Plaintiff selected a 2000 Chevrolet S10 pick-up truck that she was interested in buying. The sales representative filled out by hand a Motor Vehicle Purchase Agreement for $13,495 which Plaintiff executed. The sales representative told Plaintiff that she would receive a $1400 trade-in allowance for her Dodge Dakota Pickup Truck and required her to leave a $40.00 cash deposit to hold the new truck. The sales representative assisted Plaintiff in completing a credit application and sent Plaintiff home to wait to hear whether her application was approved. A true and accurate copy of the handwritten Motor Vehicle Purchase Agreement is attached hereto as Exhibit "A," the Cash Receipt for $40 as Exhibit "B" and of the Credit Application as Exhibit "C."

12. Sometime thereafter, Empire Hyundai telephoned Plaintiff and told her that: "We have good news; You've been approved - you get the truck." Plaintiff returned to the dealership on January 14, 2003 and paid an additional $500 by check, traded in her existing Dodge Dakota Pickup Truck for a $1400 credit towards the sales price and was then presented with the following documents by Empire, all of which she executed:

   A. a typewritten Motor Vehicle Purchase Agreement (copy attached as Exhibit "D")
   B. a Retail Installment Contract bearing a Sovereign Bank imprint, financing the $8094.95 balance of the purchase price of the vehicle at an annual percentage rate of 20.75% over 60 months (copy attached as Exhibit "E");
   C. an Automobile Hold Check Agreement (copy attached as Exhibit "F");
   D. an Odometer Disclosure Statement for the S10 Chevrolet Pickup Truck  (copy attached as Exhibit "G");
   E. an Odometer Disclosure Statement for the Dodge Dakota Pickup Truck trade-in (copy attached as Exhibit "H"); and
   F. a Limited Used Vehicle Warranty  (copy attached as Exhibit "I").

13. Plaintiff was finally presented with a certificate of sale for the S10 Chevrolet pick-up, which lists the lienholder as "Americredit Financial Services" (copy attached as Exhibit "J").

5

14. At the time she drove the S10 pick-up truck off Empire's lot on January 14, 2003, Plaintiff reasonably believed, based on the fact that she executed the Retail Installment Contract, which disclosed an annual percentage rate, finance charges, amount financed, total of payments, and total sales price that the financing was in place and that she owned the vehicle.

15. On or about January 17, 2003, Empire registered the vehicle in Plaintiff's name and forwarded her the Rhode Island Registration K002320.    A true and accurate copy of the Rhode Island Registration in the name of Diane F. Wallace for the 2000 Chevrolet S10 Pick up VIN 1GCCS195XY8211604 is attached hereto as Exhibit "K."

16. Within a few weeks after delivering the vehicle to Plaintiff, and before any payment on the vehicle was due, Empire began to make numerous telephone calls to the Plaintiff demanding the return of the vehicle, alleging that her financing had not been approved.

17. Plaintiff was confused, believed that the contract had been consummated and continued to use the vehicle in accordance the terms and conditions of the Retail Installment Contract executed between the parties.

18. In a subsequent telephone call, Empire threatened to have Plaintiff arrested if she did not return the 2000 Chevrolet S10 Pick-up truck immediately.

19. On March 3, 2003 an agent of Empire, Paul P. Caianiello, Jr., appeared at Plaintiff's home at 7:00pm and repossessed the 2000 Chevrolet S10 Pick-up truck over Plaintiff's vehement objections.    A true and accurate copy of Mr. Caianiello's handwritten note regarding the repossession is attached hereto as hereto as Exhibit "L."

20. Subsequent to the repossession of her vehicle, Plaintiff scheduled an appointment to meet with the manager of Empire to discuss the situation.    As requested, Plaintiff appeared at the

6

dealership with a relative to meet with the manager of Empire who was unavailable and referred

her to another sales associate who tried to sell Plaintiff another vehicle.   Plaintiff was furious

and demanded the return of her trade-in vehicle, the Dodge Dakota Pickup Truck, but was told

it had been sold at auction.  She also demanded the return of the $1400 trade-in value of said

vehicle along with the return of her $540 in deposits.  Empire refused these demands and told

Plaintiff they would "see her in court."

21. No advance written notices were sent by Empire to Plaintiff at any time regarding the alleged

denial of credit or the reasons therefore.

22. No advance written notices were sent by Empire to Plaintiff at any time regarding alleged

defaults on her Retail Installment Contract and, during February and March of 2003 Plaintiff

remained ready, willing and able to make her $351.00 monthly payment as required under the

that contract.

23. Plaintiff was not given advanced notice of any resale of her trade-in vehicle, the Dodge Dakota

Pickup Truck or of the 2000 Chevrolet S10 Pick-up truck as required by the UCC and M.G.L.

ch. 255B, § 20A .

24. To date, Plaintiff has not received return of her trade-in vehicle, the Dodge Dakota Pickup

Truck, it's $1400 value or the return of her $540 in deposits.

25. Defendant Household independently obtained a copy of the Plaintiff's credit report on or about

January 18, 2003.  It did not have a permissible purpose to do so.  If it did, in the alternative, it

participated in a decision which took an adverse action upon the Plaintiff's completed credit

application.

26. Defendant Wells Fargo independently obtained a copy of the Plaintiff's credit report on or about

7

January 18, 2003.  It did not have a permissible purpose to do so.  If it did, in the alternative, it participated in a decision which took an adverse action upon the Plaintiff's completed credit application.

27. Defendant Long Beach Acceptance independently obtained a copy of the Plaintiff's credit report on or about January 18, 2003.  It did not have a permissible purpose to do so.  If it did, in the alternative, it participated in a decision which took an adverse action upon the Plaintiff's completed credit application.

28. Defendant Onyx independently obtained a copy of the Plaintiff's credit report on or about January 18, 2003.  It did not have a permissible purpose to do so.  If it did, in the alternative, it participated in a decision which took an adverse action upon the Plaintiff's completed credit application.

29. Plaintiff has never received any written or oral notice of adverse action or written notice of other action from any Defendant in this case.

## COUNT ONE: VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT (AGAINST ALL DEFENDANTS)

30. Plaintiff reiterates and incorporates paragraphs 1 through 29 above as if fully set out herein.

31. The failure of the defendants to provide to Plaintiff any written or other statement of reasons for the denial of credit to Plaintiff and to provide the disclosures mandated by 15 U.S.C §1691(d) (2) (b) violated the ECOA.

32. As a result of the above alleged ECOA violations, the Plaintiff has suffered substantial actual damages in the loss of her rights to determine the basis for credit denial, her loss of the credit

itself, frustration, anger, humiliation, fear, embarrassment and other emotional and mental anguish.

33. In the alternative to the allegations that no notices were sent to the Plaintiff, she alleges that any notices sent by the Defendants do not comply with the ECOA and Regulation B, §202.9(a)(2).

34. As a result of the above alleged ECOA violations, each Defendant is liable to Plaintiff for her actual damages pursuant to 15 U.S.C. §1691(e)(a), for punitive damages of $10,000.00 against each Defendant pursuant to 15 U.S.C. § 1691e(b) and for attorneys fees and costs pursuant to 15 U.S.C. § 1691e(d).

35. Plaintiff is entitled to equitable relief against each Defendant requiring delivery of compliant notices in all future instances.

## COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT (AGAINST ALL DEFENDANTS)

36. Plaintiff reiterates and incorporates paragraphs 1 through 35 above as if fully set out herein.

37. The failure of each Defendant to send any adverse action notice to Plaintiff on each credit denial decision willfully violated the Fair Credit Reporting Act, 15 U.S.C. §1681m.

38. In the alternative to the allegation that no notices were sent to Plaintiff, she alleges that the notices sent do not comply with the Fair Credit Reporting Act, 15 U.S.C. §1681m.

39. Defendants also willfully violated the FCRA, 15 U.S.C. §1681b, 1681n and 1681q by accessing the Plaintiff's credit report without a permissible purpose in doing so.

40. In the alternative of a willful violation, the Defendants violations were negligent.

41. As a result of the above alleged FCRA violations, Plaintiff has suffered substantial actual damages in the loss of her rights to determine the basis for credit denial, her loss of the credit

itself, frustration, anger humiliation, fear embarrassment and other emotional and mental anguish.

42. As a result of these FCRA violations, each Defendant is liable to Plaintiff for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. §1681n(a)((1)(A), or actual damages pursuant to 15 U.S.C. §1681n and §1681o if the amount of actual damages is greater than the statutory amount; Defendants are also individually liable for punitive damages pursuant to 15 U.S.C. §1681n(a)(2) and for attorneys fees and costs pursuant to 15 U.S.C. §1681n and 1681o.

## COUNT THREE - VIOLATIONS OF THE MCCCDA (M.G.L. ch. 140D § 1 et seq.) (AGAINST EMPIRE ONLY)

43. Plaintiff repeats and realleges each and every allegation heretofore contained in paragraphs 1 - 42.

44. The only truth-in-lending disclosures made to Plaintiff by Empire were those contained in the "Retail Installment Contract" delivered to Plaintiff on January 14, 2004.

45. Empire violated the MCCCDA in one or more of the following ways, by example only, and without limitation:

    a. By failing to accurately state the legal obligation between the parties at the time of disclosure;
    b. By inaccurately stating the amount financed, the finance charge and the annual percentage rate ("APR") through the attempt to charge interest on the full cost of the automobile rather than merely the value of its possession during the period between January 14, 2004 and the date Defendant actually was to convey title to the automobile and perform under the sale;
    c. By failing to disclose the Empire disclosures as estimates.
    d. By misstating the Trade-in allowance it actually intended to provide to the Plaintiff.

46. As a result of the above alleged violations, Plaintiff has suffered substantial actual damages

in the loss of her rights to determine the cost of the credit, her loss of the credit itself,

frustration, anger, humiliation, fear, embarrassment and other emotional and mental anguish.

47. As a result of the above alleged violations of the MCCCDA by Empire, Plaintiff is entitled to

actual damages, statutory damages, costs and attorneys fees.  M.G.L. ch. 140D § 10(g).

## COUNT FOUR - VIOLATIONS OF THE MASSACHUSETTS REPOSSESSION REGULATION ACT (M.G.L. ch. 255B § 20A et seq.) (AGAINST EMPIRE ONLY)

48. Plaintiff repeats and realleges each and every allegation heretofore contained in paragraphs 1

- 47.

49. Empire violated the Repossession Act by failing to give written notice of default to Plaintiff,

failing to give notice to the local police station of the repossession, failing to return the

number plates to the registered owner by the end of the second day following the

repossession, failing to notify Plaintiff of her right to redeem the vehicle and failing to allow

Plaintiff to cure the default.

50. Empire violated the terms of the Retail Installment Contract which clearly stated:

REPOSSESSION OF THE VEHICLE: Repossession means our taking the vehicle from you.  If
you are in default, we can repossess the vehicle upon written notice to you and subject to your
rights to cure the default.  If there is any personal property in the vehicle, we have no obligation
to store it longer than 72 hours.  Any accessories, equipment or replacement parts will remain
with the vehicle.

51. As a result of the above alleged violations, Plaintiff has suffered substantial actual damages

in the loss of her rights to determine the cost of the credit, her loss of the credit itself,

frustration, anger, humiliation, fear, embarrassment and other emotional and mental anguish.

52.  As a result of the above alleged violations of the Massachusetts Repossession Act by

11

Empire, Plaintiff is entitled to actual damages, statutory damages. costs and attorneys fees.

## COUNT FIVE - STATUTORY FRAUD (M.G.L. ch. 93a) (AGAINST EMPIRE ONLY)

53. Plaintiff repeats and realleges each and every allegation heretofore contained in paragraphs 1

- 52.

54. Empire violated the prohibition of ch. 93A of using any deception, fraud, false pretense,

false promise, or misrepresentation in connection with a consumer transaction by each, or by

any one or a combination of the following actions:

   a. by stating that financing was approved when it had not been;
   b. by accepting a down payment of a contract that it had canceled;
   e. by placing giving Plaintiff all warranty and title documents when it alleges the contract
   was not complete;
   f. by misrepresenting that this conduct and sequence of events represented a final sale;
   g. by misrepresenting that it would have Plaintiff arrested if she did not return the
   vehicle; and
   g. by utilizing the "Spot Delivery" sales scheme to obtain cash and checks that it then
   refused to refund.

55. Empire committed the 93A violations deliberately and willfully.

56. As a result of the 93A violations, the Plaintiff has suffered substantial actual damages,

including, by example only and without limitation, the loss of the value of her vehicle, the

loss of her trade-in vehicle, the loss of use of her vehicle, the loss of her down payment, the

cost of substitute transportation, inconvenience, aggravation, humiliation, and other

emotional and mental anguish and distress, and other incidental and consequential damages

which were reasonably foreseeable by the defendant.

12

57. The use of the unfair and deceptive practices set forth herein were willful and knowing violations of Chapter 93A.

58. The Plaintiff is entitled to her actual and treble damages and her costs and attorneys fees pursuant to 93A.

## COUNT SIX: CONVERSION
## (AGAINST EMPIRE ONLY)

59. Plaintiff reiterates and incorporates paragraphs 1 through 58 above as if fully set out herein.

60. The taking of the S10 Chevrolet Pick-up constituted the tort of conversion as the vehicle was then owned by the Plaintiff.

61. The taking was a repossession without legal cause.

62. As a result of the conversion, the Plaintiff has suffered substantial actual damages, including, by example only and without limitation, the loss of the value of her vehicle, the loss of use of her vehicle, the loss of her down payment, the cost of substitute transportation, inconvenience, aggravation, humiliation, and other emotional and mental anguish and distress, and other incidental and consequential damages which were reasonably foreseeable by the defendant.

## COUNT SEVEN: FRAUD
## (AGAINST EMPIRE ONLY)

63. Plaintiff reiterates and incorporates paragraphs 1 through 62 above as if fully set out herein. Empire made the Misrepresentations so that Plaintiff would sign the Contract and become obligated to pay this amount in order to receive the car whether she paid cash or financed the transaction.

13

64. Empire intentionally misrepresented that it would make Plaintiff the owner of the car and/or had a then present intent to perform under the Contract and that it had a then present intent to execute and complete a permanent certificate of Ownership in order to obtain Plaintiff's signature on the sales and transaction documents. In addition, the use of the "spot delivery sales scheme" by Empire was accomplished for fraudulent purpose and by a fraudulent means.

65. Plaintiff relied on Empire's representations as to her becoming the owner of the car by signing the Contract, becoming obligated under it and by considering herself the owner of the car.

66. Plaintiff was harmed by her reliance on Empire's representations because she was never made the owner of the car, lost possession of the car, never received any of her down payment back, was embarrassed and humiliated when the S10 Chevrolet pick-up was repossessed when she knew she was not in default on the Contract.

67. Empire intentionally misrepresented at the time of sale that the financing contained in the Contract had been approved when it had it had not.

68. Empire made these misrepresentations so that on the one hand Plaintiff would sign the Contract and become obligated to buy the vehicle and be obligated to those payments, but on the other hand permit it to repossess the vehicle if it decided to not go through with the sale at a later date. Plaintiff relied on these misrepresentations by signing the Contract, getting her own insurance on the vehicle, and trading in her old car.

69. As a result of Empire's multiple acts of fraud and/or misrepresentations, the Plaintiff has suffered substantial actual damages, including, by example only and without limitation, the loss of the value of her vehicle, the loss of use of her vehicle, the loss of the value of her trade-in vehicle, the loss of her down payment, the cost of substitute transportation, inconvenience,

14

aggravation, humiliation, and other emotional and mental anguish and distress, and other incidental and consequential damages which were reasonably foreseeable by the defendant.

70. Empire knew that all of the above-alleged misrepresentations were false when it made them. It committed the fraud willfully, and with deliberate intent. It did so with actual and legal malice to the Plaintiff and without regard to her rights and interests. Accordingly, Empire is also liable to the Plaintiff for punitive damages.

## COUNT EIGHT: VIOLATION OF ARTICLE 9
## OF UNIFORM COMMERCIAL CODE
## (AGAINST EMPIRE ONLY)

71. Plaintiff reiterates and incorporates paragraphs 1 through 70 above as if fully set out herein.

72. After the Sale was transacted, the Contract and Empire were governed by Article 9 of the Uniform Commercial Code.

73. Upon the taking, Empire failed to comply with the default, notice and disposition requirements of Article 9 of the U.C.C. in one or more of the following ways:

a. By taking possession of the S10 Chevrolet Pick-up despite the fact that Plaintiff was not in default;

b. By failing to provide to Plaintiff any notice of repossession or notice of cure;

b. By failing to provide to Plaintiff any notice of disposition after the taking of the S10 Chevrolet Pick-up.

74. As a result of the above alleged failures of Empire to comply with Article 9 of the U.C.C., it is liable to Plaintiff for liquidated damages pursuant to M.G.L. ch. 106 in no less than the amount

of the total finance charge and 10% of the principal upon the Contract.  It is also liable for the

Plaintiff's actual damages as alleged heretofore.


**WHEREFORE** Plaintiff prays for judgment against all Defendants for damages and

attorney fees as outlined in Counts One and Two herein and for damages and attorney fees as

outlined in Counts Three, Four, Five, Six, Seven and Eight against Defendant Empire Hyundai Inc.

and for such other and further relief as the Court deems just and appropriate.


                                          Respectfully submitted,
                                          **DIANE F. WALLACE**

                                          By: _____
                                          **Christopher M. Lefebvre**
                                          **BBO #629056**
                                          **LAW OFFICES OF CLAUDE**
                                          **LEFEBVRE & SONS**
                                          **P.O. Box 479**
                                          **Pawtucket, RI  02862**
                                          **(401) 728-6060**
                                          **(401) 728-6534 (FAX)**


**JURY DEMAND**


        Plaintiff demands trial by jury.

                        _____
                        Christopher M. Lefebvre


                                16

1. Title of case (name of first party on each side only)   DIANE F WALLACE v.HSBC AUTO FINANCE INC. f/k/a Household

   Automotive Finance Corporation, Wells Fargo Financial Acceptance, Inc., Long Beach Acceptance Corp., Onyx Acceptance

   Corporation, and Empire Hyundai, Inc.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local
   rule 40.1(a)(1)).

   ___   I.       160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   _X_   II.      195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
                  740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.     for patent, trademark or copyright cases

   ___   III.     110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                  315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                  380, 385, 450, 891.

   ___   IV.      220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                  690, 810, 861-865, 870, 871, 875, 900.

   ___   V.       150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this
   district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                              YES ☐          NO  **X**

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28
   USC §2403)

                                                              YES ☐          NO  **X**

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                              YES ☐          NO  **X**

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                              YES ☐          NO  **X**

7. Do all of the parties  in this action, excluding governmental agencies of the united states and the Commonwealth of
   Massachusetts ("governmental agencies"),  residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES ☐          NO  **X**

           A.     If yes, in which division do all of the non-governmental parties reside?

                  Eastern Division  ☐          Central Division ☐          Western Division ☐

           B.     If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental
                  agencies,  residing in Massachusetts reside?

                  Eastern Division  **X**          Central Division ☐          Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes,
   submit a separate sheet identifying the motions)

                                                              YES ☐          NO  ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME ___Christopher M. Lefebvre

ADDRESS  PO BOX 479, Pawtucket, RI 02862

TELEPHONE NO. (401) 728-6060

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS
DIANE F WALLACE

**DEFENDANTS**
EMPIRE HYUNDAI, INC. , HSBC AUTO FINANCE INC. F/K/A
HOUSEHOLD AUTOMOTIVE FINANCE CORPORATION,

**(b)**  County of Residence of First Listed Plaintiff    Rhode Island
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Bristol
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)
Christopher M. Lefebvre
LAW OFFICES OF CLAUDE

Attorneys (If Known)

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                         and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN    (Place an "X" in One Box Only)

| | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
15 USC s. 1681 et seq., 15 U.S.C. §1691, et seq. various supplemental state law claims.
Brief description of cause:
FCRA, ECOA & various state statutory actions for "spot financing" and repossession of an automobile.

## VII. REQUESTED IN    COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION    UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes    ☐ No

## VIII. RELATED CASE(S)    IF ANY
(See instructions):          JUDGE                                              DOCKET NUMBER

DATE
01/10/2005

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

# Exhibit A

# EMPIRE HYUNDAI, INC.

HYUNDAI

428 PLEASANT STREET
FALL RIVER, MA. 02721
(508) 673-7646

MOTOR VEHICLE
PURCHASE AGREEMENT
For Consumer Use Only

| DATE / / | STOCK NO. | SALES REP. | EMAIL | BUYER LIC# |
|---|---|---|---|---|

| PURCHASER'S NAME | CO-PURCHASER'S NAME | BUYER S.S.# |
|---|---|---|

| ADDRESS | ADDRESS | BUYER D.O.B. |
|---|---|---|

| CITY | STATE | ZIP | CITY | STATE | ZIP | BUYER 2 LIC# |
|---|---|---|---|---|---|---|

| TELEPHONE: HOME | BUSINESS | TELEPHONE: HOME | BUSINESS | BUYER 2 S.S.# |
|---|---|---|---|---|

| ENTER MY ORDER FOR | QUANTITY | NEW | USED ☒ | FORMER USE (IF APPLICABLE) | DEMONSTRATOR | FORMER LEASE | FORMER DAILY RENTAL | OTHER | BUYER 2 D.O.B. |
|---|---|---|---|---|---|---|---|---|---|

SOURCE

| YEAR | MAKE | MODEL | BODY TYPE | MODEL NO. | TRANS: AUTO / MANUAL | CYL | PASS | DOORS |
|---|---|---|---|---|---|---|---|---|

| V.I.N. | COLOR | INTERIOR | ODOMETER | EXPECTED DELIVERY DATE |
|---|---|---|---|---|

## TRADE-IN / WARRANTY INFORMATION / PRICE

| TRADE-IN | | | | WARRANTY INFORMATION | PRICE OF UNIT |
|---|---|---|---|---|---|
| YEAR | MAKE | | | ☐ This vehicle carries an express warranty. You may request a copy of such warranty from the dealer upon request. Initial [ ] | |
| MODEL | TYPE | COLOR | | | SECURITY SYSTEM |
| V.I.N. | | | | ☐ This vehicle does not carry an express warranty. Initial [ ] | ADDITIONAL ITEMS |
| ODOMETER | | | | | |
| TRANSMISSION | | | | (Initial Applicable Statement) | |
| CYL | PASS | DOORS | | | |
| TITLE # | | STATE | | REGISTRY FEE, TITLE FEE & SALES TAX | |

I certify that the above described trade-in vehicle has a valid Motor Vehicle Title and is not a Salvage Title.
Initial [ ]

Application for Title ☒
Application for Registration    New ☐    Transfer ☒

| LIENHOLDER | Registration # |
|---|---|
| ADDRESS | |
| CITY/STATE/ZIP | |
| ACCT # | PAYOFF GOOD UNTIL |
| BALANCE DUE | / / |

| | |
|---|---|
| Registration Fee | $ |
| Title Fee | $ |
| Mass. Sales Tax | $ |
| **TOTAL** | $ |

| LIENHOLDER | |
|---|---|
| ADDRESS | |
| CITY/STATE/ZIP | |
| TELEPHONE | |

Purchaser consents to the selling dealer affixing dealership insignia, logo or other plate that advertises the name of the seller on the above described motor vehicle.

| INS. AGENT | |
|---|---|
| ADDRESS | |
| CITY/STATE/ZIP | |
| TELEPHONE | |
| FAX | |

Purchaser's Initials [ ]

In the event I fail to take delivery of the vehicle purchased by me within forty-eight (48) hours after I have been notified by you that it is ready for delivery and pay the total contract price in the manner indicated, my deposit in the amount of $ _____ may, at your option, be retained by you to compensate you in whole or in part for any losses sustained by you. Your right to retain my deposit shall be in addition to and not instead of any other right or remedy provided by applicable law including, without limiting the generality of the foregoing, the sale of the car or truck I agree to purchase. If the amount of my deposit exceeds actual damages sustained by you, you will promptly refund the difference to me.

Purchaser's Initials [ ]

THIS CONTRACT IS NOT BINDING UPON EITHER DEALER OR PURCHASER UNTIL SIGNED BY DEALER OR ITS AUTHORIZED REPRESENTATIVE. PURCHASER MAY CANCEL THIS CONTRACT AND RECEIVE A FULL REFUND AT ANY TIME UNTIL HE/SHE RECEIVES A COPY OF THIS SIGNED BY AN AUTHORIZED DEALER REPRESENTATIVE. PURCHASER MUST GIVE WRITTEN NOTICE OF CANCELLATION TO THE DEALER.

The front and back of this order comprise the entire agreement between the dealer and purchaser and no other agreement or understanding has been made or entered into. IF THIS AGREEMENT IS FOR A USED VEHICLE, THE INFORMATION YOU SEE ON THE (FEDERAL TRADE COMMISSION) WINDOW FORM IS PART OF THIS AGREEMENT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE. Purchaser represents and warrants that no credit other than that stated above has been extended to him/her by dealer. Purchaser represents and warrants that s/he has read and understands the materials printed on this motor vehicle purchase contract. Purchaser acknowledges receipt of a signed copy of this motor vehicle purchase contract.

*Sales Tax amount is included in right hand column only when dealership check is issued in payment of Massachusetts Sales Tax.

X _____
Purchaser's Signature

X _____
Co-Purchaser's Signature

X _____
APPROVED AUTHORIZED DEALER REPRESENTATIVE

| | | |
|---|---|---|
| 1. | TOTAL PRICE | |
| 2. | CREDIT/OVERALLOW. | |
| 3. | TRADE-IN ALLOWANCE | |
| 4. | TRADE DIFF (Line 1-Line 2 & 3) | |
| 5. | *MASS SALES TAX (5% of Line 4) | |
| 6. | REGISTRATION & TITLE | |
| 7. | DOCUMENTATION FEE | 189 |
| 8. | MASS INSPECTION | 29 |
| 9. | EXTENDED SERVICE AGREEMNT | |
| 10. | OTHER | |
| 11. | TOTAL CONTRACT PRICE (Total of lines 4 through 10) | |
| 12. | BALANCE DUE ON TRADE-IN | |
| 13. | TOTAL (Line 11 + 12) | |
| 14. | DEPOSIT | |
| 15. | REBATE | |
| 16. | REBATE | |
| 17. | AMOUNT TO BE FINANCED | |
| 18. | CASH DUE ON DELIVERY | |
| 19. | TOTAL PAYMENT (Total of lines 14 through 18, must equal 13) | |

Reynolds and Reynolds RO21364 Q (01/02)

# Exhibit B

# HYUNDAI

# EMPIRE HYUNDAI, Inc.

428 Pleasant Street
FALL RIVER, MASS. 02721
(508) 673-7646

# HYUNDAI

## NUMBER

**25967**

CASH RECEIVED FROM

RECEIVED BY    NANCY KAULL LYNCH
DATE    01/13/03
TIME    12:38

**10343**

DIANE WALLACE
161 COURTNEY AVE
PAWTUCKET, RHODE ISLAND 02861

| ACCT. | AMOUNT | CONTROL NUMBER | PAYMENT TYPE | AMOUNT |
|-------|--------|----------------|--------------|--------|
| 220A  | 40.00  | 10343          | CASH         | 40.00  |

LYLE
HP2114

SIGNATURE _____

PAGE 1

RECEIPT

# Exhibit C

# FIRST ESSEX BANK

211 NORTH MAIN STREET, ANDOVER, MA 01810
PHONE (978) 681-7500        FAX (978) 374-4494

| DEALER NAME: | DEALER # |
|---|---|

## INDIRECT CREDIT APPLICATION

| BORROWER'S NAME (LAST, FIRST): Wallace  Diane | CO-BORROWER'S NAME (LAST, FIRST): | ( ) SPOUSE   ( ) OTHER |
|---|---|---|

| SOCIAL SEC NO.: | DATE OF BIRTH: 5-30-56 | SOCIAL SEC NO.: | DATE OF BIRTH: |
|---|---|---|---|

| HOME PHONE: 401-405-0234 | | HOME PHONE: | |
|---|---|---|---|

| STREET ADDRESS: 161 Courtney Ave. | | STREET ADDRESS: | |
|---|---|---|---|

| CITY/STATE/ZIP: Pawtucket, RI  02861 | | CITY/STATE/ZIP: | |
|---|---|---|---|

| TIME AT ADDRESS: ___ YEARS ___ MONTHS | RESIDENCE: ( )OWN ( ) RENT ( ) OTHER | TIME AT ADDRESS: ___ YEARS ___ MONTHS | RESIDENCE: ( ) OWN ( ) RENT ( ) OTHER |
|---|---|---|---|

| PREVIOUS ADDRESS AND TIME AT THIS ADDRESS: N/A | | PREVIOUS ADDRESS AND TIME AT THIS ADDRESS: | |
|---|---|---|---|

| MORTGAGE HOLDER/LANDLORD: Wells Fargo ( C | PAYMENT AMOUNT: $ 436/5 | MORTGAGE HOLDER/LANDLORD: | PAYMENT AMOUNT: |
|---|---|---|---|

| EMPLOYED BY OR TYPE OF BUSINESS (if business application): Pinkerton Security | | EMPLOYED BY: | |
|---|---|---|---|

| POSITION: Security Officer | TIME AT JOB: 3 YEARS 1 MONTHS | POSITION: | TIME AT JOB: ___ YEARS ___ MONTHS |
|---|---|---|---|

| WORK PHONE (AREA CODE - NUMBER): 401-275-4017 | WORK EXT.. | WORK PHONE (AREA CODE - NUMBER): | WORK EXT.. |
|---|---|---|---|

| GROSS MONTHLY INCOME: $ 2,156 | | GROSS MONTHLY INCOME: | |
|---|---|---|---|

| OTHER INCOME: $ 463.00  SOURCE: Rent (c.) | | OTHER INCOME: $  SOURCE: | |
|---|---|---|---|
| $  SOURCE: | | $  SOURCE: | |

| PREVIOUS EMPLOYER AND TIME AT THIS JOB: | PREVIOUS EMPLOYER AND TIME AT THIS JOB: |
|---|---|

**NOTICE: ALIMONY, CHILD SUPPORT OR SEPARATE MAINTENANCE INCOME NEED NOT BE REVEALED IF YOU DO NOT CHOOSE TO HAVE IT CONSIDERED AS A BASIS FOR REPAYING THIS OBLIGATION.**

The above statements are true and complete and are made for the purpose of obtaining credit from FIRST ESSEX BANK (the "BANK").

I agree that the Application will remain the property of the BANK whether the loan is granted or not. I also authorize the BANK to make any credit, employment or investigation inquiry it determines appropriate for the extension or collection of amounts owed to the BANK.

| BORROWER'S SIGNATURE: | DATE: 1-12-05 | CO-BORROWER'S SIGNATURE: | DATE |
|---|---|---|---|

## DEALER TO COMPLETE THIS SECTION

### VIN NUMBER

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**(FAILURE TO PROVIDE VIN # COULD LEAD TO LONGER RESPONSE TIME)**

| VEHICLE DETAILS | TRANSACTION DETAIL |
|---|---|
| ( ) NEW  ( ) USED | 1. SELLING PRICE: |
| INVOICE PRICE (IF NEW): | 2. CASH DOWN: |
| YEAR & MAKE: | 3. REBATE: |
| MODEL: | 4. TRADE IN ALLOWANCE: |
| MILEAGE: | 5. BALANCE OWED ON TRADE: |
| OPTIONS: ( ) 4X4 ( ) SUN/MOON ROOF | 6. NET TRADE (4 MINUS 5): |
| ( ) LEATHER SEATS ( ) C.D. ( ) ABS | 7. AMOUNT REQUESTED: |
| ( ) MANUAL TRANS ( ) SECURITY SYSTEM | 8. TERM REQUESTED: |
| ( ) POWER SEATS ( ) CRUISE CONTROL | |
| ( ) ALLOY WHEELS ( ) SOLAR GLASS | |
| ( ) OTHER _____ | |
| ( ) OTHER _____ | |

# Exhibit D

# EMPIRE HYUNDAI, INC.

### HYUNDAI

428 PLEASANT STREET
FALL RIVER, MA. 02721
(508) 673-7646

**MOTOR VEHICLE PURCHASE AGREEMENT**
For Consumer Use Only

| DATE | STOCK NO. | SALES REP. | EMAIL | BUYER LIC# |
|---|---|---|---|---|
| | | | | |

| PURCHASER'S NAME | CO-PURCHASER'S NAME | BUYER S.S.# |
|---|---|---|
| | | |

| ADDRESS | ADDRESS | BUYER D.O.B. |
|---|---|---|
| | | |

| CITY | STATE | ZIP | CITY | STATE | ZIP | BUYER 2 LIC# |
|---|---|---|---|---|---|---|

| TELEPHONE: | | TELEPHONE: | | BUYER 2 S.S.# |
|---|---|---|---|---|
| HOME   BUSINESS | | HOME   BUSINESS | | BUYER 2 D.O.B. |

| ENTER MY ORDER FOR | NEW   USED   QUANTITY | FORMER USE (IF APPLICABLE) | DEMONSTRATOR   FORMER LEASE | FORMER DAILY RENTAL   OTHER | SOURCE |
|---|---|---|---|---|---|

| YEAR | MAKE | MODEL | BODY TYPE | MODEL NO. | TRANS: AUTO   MANUAL | CYL | PASS | DOORS |
|---|---|---|---|---|---|---|---|---|
| | CHEVROLET | | | | | | | |

| V.I.N. | | COLOR | INTERIOR | ODOMETER | EXPECTED DELIVERY DATE |
|---|---|---|---|---|---|
| | | GRAY | | | |

## TRADE-IN

| | | WARRANTY INFORMATION | | PRICE OF UNIT | |
|---|---|---|---|---|---|
| MODEL | DODGE | COLOR GREEN | ☐ This vehicle carries an express warranty. You may obtain a copy of such warranty from the dealer upon request.   Initial [   ] | PRICE OF UNIT | |
| V.I.N. | | | | SECURITY SYSTEM | |
| ODOMETER | | | ☐ This vehicle does not carry an express warranty.   Initial [   ] | ADDITIONAL ITEMS | |
| TRANSMISSION | | | | | |
| CYL   PASS | DOORS | | (Initial Applicable Statement) | | |
| TITLE # | STATE | | | | |

I certify that the above described trade-in vehicle has a valid Motor Vehicle Title and is not a Salvage Title.

Initial [   ]

### REGISTRY FEE, TITLE FEE & SALES TAX

| | | Application for Title ☐ |
|---|---|---|
| LIENHOLDER | | Application for Registration   New ☐ |
| ADDRESS | | Transfer ☐ |
| CITY/STATE/ZIP | | Registration # |
| ACCT # | PAYOFF GOOD UNTIL | Registration Fee $ |
| BALANCE DUE | | Title Fee $ |
| LIENHOLDER  AMERICREDIT FINANCIAL SERVICES | | Mass Sales Tax $ |
| ADDRESS  BY 132673 | | TOTAL $ |
| CITY/STATE/ZIP  ARLINGTON TX 76096-2673 | | |
| TELEPHONE  (800) 771-7399 | | |

| INS. AGENT | |
|---|---|
| ADDRESS | Purchaser consents to the selling dealer affixing dealer-ship insignia, logo or other plate that advertises the name of the seller on the above described motor vehicle. |
| CITY/STATE/ZIP | |
| TELEPHONE | |
| FAX | Purchasers Initials [   ] |

In the event I fail to take delivery of the vehicle purchased by me within forty-eight (48) hours after I have been notified by you that it is ready for delivery and pay the total contract price in the manner indicated, my deposit in the amount of $ _____ may, at your option, be retained by you to compensate you in whole or in part for any losses sustained by you. Your right to retain my deposit shall be in addition to and not instead of any other right or remedy provided by applicable law including, without limiting the generality of the foregoing, the sale of the car or truck I agree to purchase. If the amount of my deposit exceeds actual damages sustained by you, you will promptly refund the difference to me.

{             }
Purchaser's Initials

THIS CONTRACT IS NOT BINDING UPON EITHER DEALER OR PURCHASER UNTIL SIGNED BY DEALER OR ITS AUTHORIZED REPRESENTATIVE. PURCHASER MAY CANCEL THIS CONTRACT AND RECEIVE A FULL REFUND AT ANY TIME UNTIL HE/SHE RECEIVES A COPY OF THIS SIGNED BY AN AUTHORIZED DEALER REPRESENTATIVE. PURCHASER MUST GIVE WRITTEN NOTICE OF CANCELLATION TO THE DEALER.

The front and back of this order comprise the entire agreement between the dealer and purchaser and no other agreement or understanding has been made or entered into. IF THIS AGREEMENT IS FOR A USED VEHICLE, THE INFORMATION YOU SEE ON THE (FEDERAL TRADE COMMISSION) WINDOW FORM IS PART OF THIS AGREEMENT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE. Purchaser represents and warrants that no credit other than that stated above has been extended to him/her by dealer. Purchaser represents and warrants that s/he has read and understands the materials printed on this motor vehicle purchase contract. Purchaser acknowledges receipt of a signed copy of this motor vehicle purchase contract.

*Sales Tax amount is included in right hand column only when dealership check is issued in payment of Massachusetts Sales Tax.

| | | | |
|---|---|---|---|
| 1. | TOTAL PRICE | | |
| 2. | CREDIT/OVERALLOW. | | |
| 3. | TRADE-IN ALLOWANCE | | |
| 4. | TRADE DIFF (Line 1-Line 2 & 3) | | |
| 5. | *MASS SALES TAX (5% of Line 4) | | |
| 6. | REGISTRATION & TITLE | | |
| 7. | DOCUMENTATION FEE | | 189 |
| 8. | MASS INSPECTION | | 29 |
| 9. | EXTENDED SERVICE AGREEMNT | | |
| 10. | OTHER | | |
| 11. | TOTAL CONTRACT PRICE (Total of lines 4 through 10) | | |
| 12. | BALANCE DUE ON TRADE-IN | | |
| 13. | TOTAL (Line 11 + 12) | | |
| 14. | DEPOSIT | | |
| 15. | REBATE | | |
| 16. | REBATE | | |
| 17. | AMOUNT TO BE FINANCED | | |
| 18. | CASH DUE ON DELIVERY | | |
| 19. | TOTAL PAYMENT (Total of lines 14 through 18, must equal 13) | | |

X _____
Purchaser's Signature

X _____
Co-Purchaser's Signature

X _____
APPROVED AUTHORIZED DEALER REPRESENTATIVE

Reynolds and Reynolds RO21364 Q (01/02)

# Exhibit E

# Sovereign Bank

**RETAIL INSTALLMENT CONTRACT**

**MA**

Dealer Number _____    Date    01.14.2005

☐ If this box is checked, this is a simple interest contract **WITH** a "Balloon Payment" as the last scheduled payment. If this box is not checked, this is a simple interest contract **WITHOUT** a "Balloon Payment" as the last scheduled payment.

| Buyer (and Co-Buyer) Name and Address (include Zip Code) | Creditor – Seller Name and Business Address |
|---|---|
| DIANE WALLACE<br>161 COURTNEY AVE<br>PAWTUCKET RI 02861 | EMPIRE HYUNDAI INC.<br>428 PLEASANT ST.<br>FALL RIVER MA 02721 |

**WHO IS BOUND:** You, the Buyer (and Co-Buyer, if any), may buy the vehicle described below for cash or on credit. By signing below, you choose to buy the vehicle on credit under the terms on the front and back of this Contract and are individually liable for any amount due. In this Contract, "we", "us", and "our" mean the creditor named above and, after assignment, the creditor's assignee.

**DESCRIPTION OF VEHICLE:** You agree to buy and we agree to sell the following vehicle:

| New, Used or Demo | Year | Make and Model | Body Type | Vehicle Identification Number | Key Number |
|---|---|---|---|---|---|
| USED | 2000 | CHEVROLET TRUCK S10 PICKUP | 2 DOOR EXTENDED | 1GCCS195XY8211604 | |

If truck or recreational vehicle – Describe body, gross vehicle weight and major items of equipment sold:

The vehicle is being purchased primarily for ☒ personal, family or household, ☐ business, or ☐ commercial purposes.

**NOTICE TO BUYERS OF USED OR DEMONSTRATION VEHICLES: The information you see on the window form for this vehicle is part of this Contract. Information on the window form overrides any contrary provisions in the contract of sale.**

## TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS<br>The amount you will have paid after you have made all payments as scheduled. | TOTAL SALE PRICE<br>The total cost of your purchase on credit, including your downpayment of $ 2900.00 |
|---|---|---|---|---|
| 20.75 % | $ 8094.95 | $ 12875.65 | $ 20970.60 | $ 23870.60 |

**PAYMENT SCHEDULE:** Your payment schedule will be ____ 60 ____ monthly payments of $ ____ 349.51 ____ each, due on the same day of each month starting on ____ 02/28/2005 ____

**BALLOON PAYMENT:** If this Contract is checked with "Balloon Payment" above, your payment schedule will be ____ N/A ____ monthly payments of $ ____ N/A ____ each, due on the same day of each month starting on ____ N/A ____, and then your last payment will be $ ____ N/A ____, due on ____ N/A ____

**PREPAYMENT:** You have the right to pay off this Contract early. If you do so, you will not have to pay a penalty.

**SECURITY:** You are giving us a security interest in the vehicle being purchased.

**LATE FEE:** If a payment is more than fifteen days late, you will be charged a default charge of $5.00 or five percent of the unpaid amount of the installment, whichever is less.

**OTHER TERMS:** Please read this Contract, including the reverse side, for additional information on security interests, nonpayment, default, and our right to require repayment in full before the scheduled maturity date.

## ITEMIZATION OF THE AMOUNT FINANCED

1. Cash Price (including any accessories, services, and taxes): ..................................................... $ 15509.65
2. Downpayment:
   A. Cash Downpayment ................................................................................................. $ 1500.00
   B. Manufacturer's Rebate Applied to Downpayment ................................................... $ N/A
   C. Trade-in (Your trade-in is a ____ 1994 DODGE TRUCK DAKOTA ____ )
      <span style="font-size:smaller">Year        Make        Model</span>
      1. Value of Trade-in ................................................................................................ $ 1400.00
      2. Lien Payoff to _____ $ N/A
3. Unpaid Balance of Cash Price (1 minus 2A minus 2B minus 2C1 plus 2C2): .............. $ 12609.65
4. Other Charges Including Amounts Paid to Others on Your Behalf:
   A. Amounts Paid to Insurance Companies*:
      1. Vendor's Single Interest Insurance ............................................. $ N/A
      2. Optional Credit Life Insurance ..................................................... $ N/A
      3. Optional Credit Accident and Health Insurance ........................... $ N/A
   B. Amounts Paid to Public Officials:
      1. Government License and/or Registration Fees .............................. $ N/A
      2. Certificate of Title Fees ................................................................. $ 77.00

|  |  |  |
|---|---|---|
| 3. Lien Recording Fees | $ | N/A |
| 4. UCC Filing Fees | $ | N/A |
| C. Seller's Documentary Fee (not a governmental fee) | $ | 195.00 |
| D. Other Charges (Describe who will receive payment and purpose)* | | |
| 1. To _____ For _____ | $ | N/A |
| 2. To _____ For _____ | $ | N/A |
| 3. To _____ For _____ | $ | N/A |
| *We may be retaining or receiving a portion of these amounts. | | |
| E. Total Other Charges and Amounts Paid to Others on Your Behalf (A plus B plus C plus D) | $ | 255.00 |
| 5. Amount Financed / Unpaid Balance (3 plus 4E): | $ | 12875.55 |

**PROMISE TO PAY:** You promise to pay us the Amount Financed shown above, plus a Finance Charge determined by applying each day a daily rate of 1/365th of the Annual Percentage Rate shown above to the unpaid balance of the Amount Financed. You also agree to pay any late charges you incur.

**PAYMENTS BEFORE OR AFTER DUE DATE: This is a simple interest Contract. This means that the amount of the Finance Charge shown above may vary depending upon when your payments are received.** The earlier you make payments before their due dates, the less Finance Charge you will owe. The later you make payments after they are due, the greater the Finance Charge. We credit each payment in any manner we choose, unless applicable law requires a particular method of payment allocation. We will send you a check for any amount owed you (if it is $1.00 or more) after you make your last payment; we will advise you of any additional amount owed (if it is $1.00 or more).

**BALLOON PAYMENT:** IF THIS CONTRACT IS CHECKED WITH "BALLOON PAYMENT" ABOVE, THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS. THE LAST SCHEDULED PAYMENT IS SUBSTANTIALLY LARGER THAN EACH OF THE OTHER SCHEDULED PAYMENTS. The due date and amount of this last scheduled payment are shown above. That amount may be less than what we estimate the vehicle will be worth at the time such payment is due. The paragraph on the reverse entitled "LAST PAYMENT OPTIONS" applies and the odometer reading referred to in Section (B)(5) of such paragraph is _____ N/A _____ miles.

**LOCATION OF VEHICLE:** The vehicle will be kept at the above address of the Buyer, unless another address is listed below:

_____

**VENDOR'S SINGLE INTEREST INSURANCE:** Insurance coverage to protect Assignee for loss or damage to the vehicle (collision, fire and theft) is required. You have the option of furnishing the required insurance either through your existing policies or you may purchase equivalent insurance coverage through anyone you wish acceptable to the Seller. If you elect to purchase this coverage through the Seller, the cost of such insurance is shown in Item 4A(1). The coverage is for the initial term of this Contract. This insurance does not protect your interest in the vehicle. The charge for this coverage is not refundable upon prepayment unless such a refund is required by law.

**CREDIT INSURANCE: YOU CANNOT BE DENIED CREDIT SIMPLY BECAUSE YOU CHOOSE NOT TO BUY CREDIT INSURANCE. CREDIT LIFE INSURANCE AND CREDIT ACCIDENT AND HEALTH INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT. INSURANCE WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL CHARGE.** The policies or certificates issued by the insurer will describe the terms and conditions in further detail. If you want the following insurance, sign below.

☐ Life    ( ☐ Buyer    ☐ Co-Buyer    ☐ Both) at a premium of $ _____ N/A _____ for a term of _____ N/A _____.

Credit life insurance will pay your debt on this Contract up to $ _____ N/A _____ .

☐ Disability, Accident and Health (Buyer Only) at a premium of $ _____ N/A _____ for a term of _____ N/A _____ .

Credit disability, accident and health insurance will pay your debt on this Contract up to $ _____ N/A _____ .

The name of the insurer is _____ N/A _____ of _____ N/A _____ .

_____    _____
Buyer Signature          Date    Co-Buyer Signature          Date

**THIS CONTRACT DOES NOT PROVIDE FOR AUTOMOBILE LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS.**

**IMPORTANT: THE TERMS OF THIS CONTRACT ARE CONTAINED ON BOTH SIDES OF THIS PAGE. READ THE ADDITIONAL TERMS ON REVERSE SIDE BEFORE SIGNING BELOW.**

**NOTICE TO BUYER: 1. Do not sign this contract if any of the spaces intended for the agreed terms to the extent of then available information are left blank. 2. You are entitled to an exact copy of the contract you signed. 3. Under the law, you have the following rights, among others: (a) to pay off in advance the full amount due and to obtain a partial refund of the finance charge; (b) to redeem the property if repossessed for a default; (c) to require, under certain conditions, a resale of the property if repossessed.**

**By signing below, you acknowledge that you have received a completely filled-in copy of this contract signed by the Seller on the date of this contract.**

Buyer
Signs _____ (Seal)    Co-Buyer
Signs _____ (Seal)

Creditor-Seller
Signs _____    By signing here, the Creditor-Seller accepts this Contract and also agrees to the terms of the Seller's Assignment on the reverse side.

Rg. 4/02

CC197909

CUSTOMER COPY

LAST PAYMENT OPTIONS: If you have a balloon payment as the last scheduled payment of make that payment, you have the option to either: (A) refinance your fa    eduled payment at the Annual Percentage Rate shown    e front of this Contract and for a monthly term then available, which means that final    charges at such rate will continue to accrue and you will n    e monthly payments in an amount we calculate based on such rate and new monthly term until you pay the amounts you owe under this Contract in full, provided, however, that you will have this right to refinance only if you are not in default under this Contract; or (B) return and transfer the vehicle to us if you satisfy the following conditions by the date the last scheduled payment is due: (1) you give us at least 30 days advance written notice of your intention to deliver the vehicle to us instead of making the last scheduled payment; (2) you are not in default under this Contract; (3) you pay us a disposition fee of **$600** and all amounts owing under this Contract as of the due date of your last scheduled payment except for the amount of the last scheduled payment; (4) you deliver the vehicle to us, at a place we designate, together with the vehicle title (if you live in a state that does not send the title to the secured party), showing no liens other than ours; and all other papers we need signed by you in order to transfer ownership of the vehicle; (5) if, when you deliver the vehicle to us, the vehicle's odometer reads greater than the allowed mileage stated on the front of this Contract in the paragraph entitled "BALLOON PAYMENT," you pay us **15 cents per mile** for each such excess mile over the allowed mileage; and (6) if the vehicle is not in "good running order and condition" when you deliver it to us, you pay us the amount it costs us or would cost us to put the vehicle in good running order and condition. In order to be in "good running order and condition," the vehicle must have, among other things, no less than four matching tires of equal quality to the originals, plus a spare of equal quality or of the type originally provided by the manufacturer of the vehicle, with each tire having at least one-eighth inch of remaining tread at its shallowest point, and no scratches, chips, cracks, or other damages in the glass, body, or interior beyond normal wear and tear.

If you disagree with the amount we determine is necessary to restore the vehicle to "good running order and condition," you may obtain, AT YOUR EXPENSE, and within 10 days of our determination, a written estimate of such amount from an independent appraiser acceptable to us. If you do so, the amount you must pay us will be the lesser of the charge we determine or the charge the appraiser determines to restore the vehicle to "good running order and condition."

If you deliver the vehicle to us in satisfaction of the last scheduled payment, and meet each of the above conditions, we will then have the entire risk of loss or benefit of gain if and when we dispose of the vehicle.

**OWNERSHIP AND RISK OF LOSS:** You agree to pay us all you owe under this Contract even if the vehicle is damaged, destroyed or missing. You agree not to sell, transfer, or remove the vehicle from the United States for more than 30 days without our written permission. You agree to maintain the vehicle in good condition and repair, except wear and tear caused by ordinary use. We may inspect the vehicle at any reasonable time. You will not expose the vehicle to misuse or confiscation or permit anyone to use the vehicle for any unlawful purpose. You will keep the vehicle free of any claims and seizures by any government authority. You will not rent the vehicle to others or carry passengers for hire. If we pay any repair bills, storage bills, taxes, fines, or other charges on the vehicle, you will repay the amount when we ask for it. You will immediately notify us of any change in your address or the address where the vehicle is regularly located.

**SECURITY INTEREST:** You are giving us a security interest in the vehicle being purchased; all proceeds of the vehicle; all accessions; and any attachments, accessories, or equipment affixed to the vehicle within ten days of this Contract. The security interest also covers: (1) insurance premiums returned to us; (2) proceeds of insurance, and (3) proceeds of any insurance policies on your life or health financed in this Contract. These secure payment of all amounts you owe in this Contract and in any transfer, renewal, extension, modification, refinancing, or assignment of this Contract. It also secures your other agreements in this Contract. For purposes of this Contract, we agree to forego any security interest you may have given under another agreement which secures your obligation under this Contract. You will cause or cooperate in causing our security interest (lien) on the vehicle to be shown on the title. You will not allow any subordinate or other liens to be placed on the vehicle.

**REQUIRED PHYSICAL DAMAGE INSURANCE:** You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this Contract. You will make us loss payee and provide evidence of insurance. At any time during the term of this Contract, if you do not have physical damage insurance which covers both your and our interests in the vehicle, then we may buy it for you. If we do not buy physical damage insurance which covers both interests in the vehicle, and if VSI insurance is not included in this Contract, we may, if we decide, buy insurance which covers only our interest, as permitted by applicable law.

We are under no obligation to buy any insurance, but may do so if we desire. If we buy either of these coverages, we will let you know what type it is and the charge you must pay. The charge will consist of the cost of the insurance and a Finance Charge at the Annual Percentage Rate applicable to this Contract, but not to exceed the highest rate permitted by law. You agree to pay the charge in equal installments along with the payments shown on the payment schedule.

If the vehicle is lost or damaged, you agree that we can use any insurance settlement either to repair the vehicle or to apply to your debt.

**INSURANCE CHARGES RETURNED TO US:** If any charge for required insurance is returned to us, it may be credited to your account or used to buy similar insurance or insurance covering only our interest in the vehicle. Any refund on optional insurance we obtain will be credited to your account or returned to you. Any insurance charges returned to us and credited to your account will be applied to the principal balance of your debt. You must still pay all subsequent payments in full and on time, until your entire debt has been paid.

**DEFAULT:** You are in default if: (1) you fail to make a regularly scheduled installment payment within 10 days of its due date; or (2) any event occurs which substantially impairs the value of the vehicle.

**REQUIRED REPAYMENT IN FULL BEFORE THE SCHEDULED DATE:** If you are in default, we can upon written notice to you and subject to any right you may have to cure the default, demand that you pay all you owe on this Contract at once. Interest will continue to accrue at the Contract rate until we recover payment in full, even if we have obtained judgment against you.

**REPOSSESSION OF THE VEHICLE:** Repossession means our taking the vehicle from you. If you are in default, we can repossess the vehicle upon written notice to you and subject to your rights to cure the default. If there is any personal property in the vehicle, we have no obligation to store it longer than 72 hours. Any accessories, equipment or replacement parts will remain with the vehicle.

**GETTING THE VEHICLE BACK AFTER REPOSSESSION:** If we repossess the vehicle, you have the right to get it back (redeem) by curing any payment default(s) within the time allowed in the cure notice or otherwise by paying the entire amount you owe on this Contract (not just past due payments), plus, in either case, the cost of taking and storing the vehicle and other expenses that we have had. Your right to redeem will end when the vehicle is sold.

**SALE OF THE REPOSSESSED VEHICLE:** We will send you a written notice of sale at least 20 days before selling the vehicle. If you do not redeem the vehicle by the date on the notice, we can sell it. We will use the net proceeds of the sale to pay all or part of your debt. The net proceeds of sale will be figured this way: Any charges for taking, storing, cleaning, advertising and selling the vehicle, any attorney's reasonable fees, any court costs and any other charges permitted by law will be subtracted from the selling price. If you owe us less than the net proceeds of sale, we owe you the difference, unless someone else has an interest in the vehicle. For example, we may be required to pay a lender who has given you a loan and also taken a security interest in the vehicle.

If you owe more than the net proceeds of sale, to the extent allowed by law you will pay us the difference between the net proceeds of sale and what you owe when we ask for it. If you do not pay this amount when asked, you may also be charged interest at the highest lawful rate, not to exceed the Annual Percentage Rate applicable to this Contract, until you do pay all you owe to us.

**COLLECTION COSTS:** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's reasonable fees and any court costs to the extent permitted by law.

**LATE CHARGE:** If a payment is more than fifteen days late, you will be charged a default charge of $5.00 or five percent of the unpaid amount of the installment, whichever is less.

**RETURNED CHECK FEE:** You may be charged a fee of $10.00 for any check, draft, money order or item submitted to us for any payment under this Contract which is returned unpaid or not honored by a bank or other depository.

**DELAY IN ENFORCING RIGHTS AND CHANGES OF THIS CONTRACT:** We can delay or refrain from enforcing any of our rights under this Contract without losing them. For example, we can extend the time for making some payments without extending others. Any change in terms of this Contract must be in writing and signed by us. No oral changes are binding. If any provision of this Contract conflicts with applicable law, it will be considered modified to comply with that law and the remaining provisions shall continue.

**WARRANTIES SELLER DISCLAIMS: You understand that the Seller is not offering any express warranties unless the Seller extends a written warranty.** This provision does not affect any warranties covering the vehicle which may be provided by the vehicle manufacturer.

**RIGHT TO OFFSET:** To the extent provided by operation of law, if you are in default, we can upon written notice to you and subject to your

RIGHT TO OFFSET: To the extent provided by    ration of law, if you are in default, we can upo    tten notice to you and subject to your right to cure the default, pay all or part of the    ounts owed under this Contract from any depos    or funds that you have with us without telling you ahead of time.

CREDIT REPORTING: You agree that we or our affiliate may obtain a consumer credit report periodically from one or more consumer reporting agencies (credit bureaus) in connection with your application and any update, renewal, refinancing, modification or extension of this Contract. If you ask you will be told the name and address of any credit bureau from which we or our affiliate obtained your credit report. We may also verify your employment, pay, assets and debts. Anyone receiving a copy of this is authorized to provide us with such information. You agree that, to the extent permitted by law, we, our assignee, any of our affiliates, and others may exchange credit, account and financial information (including information in any credit reports) about you. You agree that this includes, but is not limited to, the sharing of information for the purposes of providing customer service, considering your eligibility for any product or service offered by us or others, and enforcing any obligations owed by you to us or to an affiliate, to the extent permitted by applicable law.

GOVERNING LAW: This Contract is governed by the law of the Commonwealth of Massachusetts.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

## Guaranty

FOR VALUE RECEIVED, undersigned, jointly and severally if more than one, unconditionally guarantee payment and performance of all obligations of Buyer and Co-Buyer under the above Retail Installment Contract ("the Contract"), accept all provisions of the Contract and agree to pay all reasonable collection expenses and attorney's reasonable fees incurred in enforcing this guaranty. Undersigned hereby waive demand for payment, notice of nonpayment and notice of acceptance of this guaranty, waive all defenses generally available to sureties and guarantors, and consent to extensions of time of payment and other indulgences, including, without limitation, release of any guarantor of the Contract or release of the vehicle which is collateral for performance of the obligations of Buyer and Co-Buyer, which may be granted to Buyer and Co-Buyer or any guarantor of the Contract without notice to undersigned and whether or not (and before or after) repossession has been made or undertaken and whether or not suit has been brought against Buyer or Co-Buyer or any guarantor of the Contract. Undersigned shall be primarily and jointly and severally liable with Buyer and Co-Buyer for full performance of Buyer's and Co-Buyer's obligations under the Contract.

_____ (Seal) _____
Date          Guarantor                                Address

_____ (Seal) _____
Date          Guarantor                                Address

## Seller's Agreement with Assignee

The terms of A, B, or C below, as evidenced by the signature of the undersigned Seller ("Seller"), apply to the assignment of the foregoing contract

("Contract") to _____ , ("Assignee").

### A. Seller's Full Recourse Assignment and Guaranty

For value received, Seller does hereby sell, assign, and transfer to Assignee all right, title, and interest which Seller has in, to, and under the Contract and the property or collateral referred to therein ("Property"), with power to take legal proceedings in the name of Seller or itself with respect thereto. Seller unconditionally guarantees payment when due of the obligations of "Buyer" and/or "Co-Buyer(s)" (individually and collectively called "Buyer" here) hereunder, accepts all provisions hereof and agrees to pay all collection expenses and attorney's reasonable fees incurred in enforcing this guaranty. Seller hereby waives demand for payment and notice of non-payment or other default and consents to an extension or extensions of time of payment or any other indulgences that may be granted to Buyer without notice to and without affecting the liability of Seller hereunder. Seller agrees that its obligations hereunder are absolute and are not conditioned on whether or not repossession has been made or undertaken and whether or not suit has been brought against Buyer.

Seller: _____ By: _____
                                                                                        Title

### B. Seller's Limited Recourse Assignment (90 Days)

For value received, Seller does hereby sell, assign, and transfer to Assignee all right, title, and interest which Seller has in, to, and under the Contract and the property or collateral referred to therein ("Property"), with power to take legal proceedings in the name of Seller or itself with respect thereto. Seller warrants to Assignee with regard to the Contract and Property that:

1. The person, persons, firm, or corporation described as the "Buyer" and/or "Co-Buyer(s)" (individually and collectively called "Buyer" here) has legal capacity to execute the Contract;
2. Buyer's address is correct;
3. Buyer's true name is signed to the Contract by the Buyer or a duly authorized agent;
4. Buyer, if a person, was of legal age or older when the Contract was executed;
5. The Cash Downpayment made by Buyer as stated in the Contract represents cash payment(s) unless otherwise described and no part thereof was loaned by Seller to Buyer, and that Seller has no knowledge that any part of Cash Downpayment was loaned by any other party to Buyer;
6. Title to the Property is free and clear of all claims, liens, and encumbrances whatsoever, except the lien created by the Contract;
7. Any and all acts, filings, and notations required with respect to the motor vehicle certificate of title and similar title documents necessary to perfect Assignee's security interest in the Property have been properly effected;
8. The Contract is genuine, valid, complete, and properly executed;
9. All notices and/or statements required by law to be delivered or given to Buyer have in fact been given or delivered; and
10. Seller has complied with all applicable laws and regulations governing the transaction evidenced by the Contract.

Seller hereby waives all demands for payment, notice of default and repossession of the Property. Seller further agrees that only Assignee may grant any extension(s) of time or approve a transfer of equity and may do so without notice to Seller and without affecting the liability of Seller hereunder. Seller specifically agrees with Assignee that upon breach of any of the warranties of the Seller made in the Contract or made herein above, Seller will repurchase the Contract from Assignee, paying therefor the amount owing thereon plus all costs and expenses.

Seller: _____ By: _____
                                                                                        Title

### C. Seller's Assignment on Non-Recourse Basis (If Seller's Warranties are not Breached)

For value received, Seller does hereby sell, assign, and transfer to Assignee all right, title, and interest which Seller has in, to, and under the Contract and the property or collateral referred to therein ("Property"), with power to take legal proceedings in the name of Seller or itself with respect thereto. In addition, Seller makes all the warranties with regard to the Contract and Property set forth in "B. Seller's Limited Recourse Assignment" set forth above, all of which warranties are herein incorporated by reference. Seller agrees with Assignee that only upon a breach of any of the aforesaid warranties will Seller repurchase the Contract from Assignee, paying therefor the amount owing thereon plus all costs and expenses, without the need for Assignee to repossess the Property.

Seller: _____ By: _____
CC 10PT-03                                                                                Title

# Exhibit F



# AUTOMOBILE HOLD CHECK AGREEMENT

| Purchase Date | Make and Year | Serial Number | Approval Code |
|---|---|---|---|

| Subscriber Name | | | TeleCheck Number |
|---|---|---|---|

| Check Writer Name: | | Check Writer ID Type & Number: |
|---|---|---|

| Purchaser Name: (If different from Check Writer) | |
|---|---|

It is agreed by Subscriber and the undersigned that the dates of deposit for the check(s) listed below will be strictly adhered to.

| Check Information | Check #1 | Check #2 | Check #3 | Check #4 | I, the undersigned, warrant that the check(s) listed shall clear the bank upon which they are drawn on the dates specified. If the check(s) fail to clear the bank for any reason, including stop payment, I promise to pay either the merchant (Subscriber) or TeleCheck, in the event TeleCheck purchases the check(s). I further understand that I have received sufficient consideration for issuing of these check(s). |
|---|---|---|---|---|---|
| Check Number | | | | | |
| Check Amount | | | | | |
| Date of Deposit | | | | | |

| Check Writer Signature: | Date |
|---|---|

| Purchaser Signature: (If different from check writer) | Date |
|---|---|

| Subscriber Representative Signature: | Date |
|---|---|

© TeleCheck Services, Inc.—1993

White—Original    Canary—Accounting    Pink—Service

TML 2003  REV 2/93

# Exhibit G

ODOMETER DISCLOSURE STATEMENT

EMPIRE HYUNDAI INC.
02418

CHEVROLET TRUCK             1500 PICKUP          2 DOOR EXTENDED

1GCEK19V49E211630                                           2000

EMPIRE HYUNDAI INC.

630 PLEASANT ST.

FALL RIVER    MA                              02721

01/19/01
DATE OF STATEMENT

DIANE WALLACE
PRINTED NAME

DIANE WALLACE
TRANSFEREE'S NAME

61 COURTNEY AVE
TRANSFEREE'S ADDRESS (STREET)

PAWTUCKET                          RI                      02861
CITY                               STATE                   ZIP CODE

---

## CERTIFICATION OF PRIOR USE AND EMISSION CONTROL EQUIPMENT

I/we hereby certify, represent and warrant that the motor vehicle described above was not used by me/us as a demonstrator, police car, taxicab, lease car or daily rental during the period that I/we owned it or at any time prior thereto to the best of my/our knowledge and belief.

I/we further certify, represent and warrant that the emission control equipment affixed or installed in or to the motor vehicle described above has not been altered, changed, damaged or modified in any respect.

_____
Signature (Seller)

Date _____            _____
                                Signature (Seller)

# Exhibit H

DIANE WALLACE

163055

DODGE TRUCK                      DAKOTA                    PICKUP

1B7FL26X7BN106361                                         1994

DIANE WALLACE

36 COURTNEY AVE

PAWTUCKET                                                 0286

11 NOVEMBER 00

EMPIRE HYUNDAI INC.

TRANSFEREE'S NAME

900 PLEASANT ST.

FALL RIVER                                    MA          02721

---

## CERTIFICATION OF PRIOR USE AND EMISSION CONTROL EQUIPMENT

I/we hereby certify, represent and warrant that the motor vehicle described above was not used by me/us as a demonstrator, police car, taxicab, lease car or daily rental during the period that I/we owned it or at any time prior thereto to the best of my/our knowledge and belief.

I/we further certify, represent and warrant that the emission control equipment affixed or installed in or to the motor vehicle described above has not been altered, changed, damaged or modified in any respect.

Date _____

_____
Signature (Seller)

_____
Signature (Seller)

FORM 10591  MSACA Services Corp., 10 Temple Place, Boston, MA 02111

# Exhibit I

# LIMITED USED VEHICLE WARRANTY

(THE "DEALER")

## THE DEALER WARRANTS THIS

VEHICLE: _____
      (YEAR)      (MAKE)      (MODEL)      (VIN NUMBER)

against any defect, malfunction, or combination of defects or malfunctions, that impairs its safety or use for a period of

_____ (A)  90 days or 3,750 miles, whichever comes first (for vehicles with fewer than 40,000 miles on the odometer at the time of sale, or if the true mileage is not known and the vehicle is three years old or less)

_____ (B)  60 days or 2,500 miles, whichever comes first (for vehicles with 40,000 to 79,999 miles on the odometer at the time of sale, or if the true mileage is not known and the vehicle is more than three but less than six years old)

_____ (C)  30 days or 1,250 miles, whichever comes first (for vehicles with 80,000 to 124,999 miles on the odometer at the time of sale, or if the true mileage is not known and the vehicle is six years old or more)

from the date of delivery of the vehicle to you. (Dealer to check A,B, or C above.)

The Dealer will provide the full cost of parts and labor necessary to repair all covered defects. However, the Dealer may charge you up to a total of $100.00 (Dealer to fill in an amount from $0 to $100) per vehicle for the repair of all covered defects during the warranty period.

The warranty period is extended one day for every day the vehicle is in the shop for repairs, and one mile for every mile the vehicle is driven between the dealer's acceptance of the vehicle for repair and its return to the consumer.

The warranty is extended for 30 days from the completion of any repair attempt for every defect that was the subject of the repair attempt.

The Dealer will give you a refund if a defect that impairs the safety or use of the vehicle continued to exist or recurred within the warranty period after either three repair attempts for the same defect or being out of service after being returned for repair of any defect or defects for a cumulative total of ten or more business days.

Defects that are covered by the manufacturer's warranty are not covered by this warranty if the Dealer gives you a copy of the manufacturer's warranty, that warranty has been assigned to you, and the Dealer assures that those defects are repaired.

This warranty is provided pursuant to G.L. c. 90, sec. 7N1/4, the used vehicle warranty law. For further information about that law contact the Executive Office of Consumer Affairs and Business Regulation at 727-5095.

Please sign and date this warranty below. Keep one copy for your records and give the other copy to the dealer.

DATE: _____    SIGNATURE: _____
                                 BUYER

                                 _____
                                 BUYER

FORM 108-88 Rev. 1 © MSADA Service Corp., 59 Temple Place, Boston, MA 02111

PURCHASER'S COPY

Exhibit J

# EMPIRE HYUNDAI, INC.
### 428 Pleasant St.
### FALL RIVER, MA 02721
### (508) 673-7646

No.

CUST. NO.

SOLD TO:

ADDRESS :

SALESPERSON :

| YEAR | STOCK NO. | MAKE | MODEL | NEW USED | KEY NOS |
|------|-----------|------|-------|----------|---------|
|      |           |      |       |          |         |

VIN

### DESCRIPTION OF TRADE-IN

| YEAR | STOCK NO. | MAKE | MODEL | VIN |
|------|-----------|------|-------|-----|
|      |           |      |       |     |

### OPTIONAL EQUIPMENT AND ACCESSORIES

| DESCRIPTION | SALES |
|-------------|-------|
| | |
| PROTECTION PLAN | |
| USED CARS - RETAIL | |
| - WHLSE | |
| USED TRUCK - RETAIL | |
| - WHLSE | |
| SALES TAX | |
| LICENSE & TITLE | |
| TOTAL CASH PRICE | |
| FINANCING | |
| INSURANCE | |
| TOTAL TIME PRICE | |
| DEPOSIT | |
| CASH ON DELIVERY | |
| TRADE IN ALLOWANCE | |
| MONTHS   PAYMENTS   DOLLARS | |
| $   PER MONTH | |
| TOTAL | |

# Exhibit K

STATE OF RHODE ISLAND
DEPARTMENT OF ADMINISTRATION
DIVISION OF MOTOR VEHICLES

COMMERCIAL
REGISTRATION CERTIFICATE

| CODE FOR CLASS OR REGISTRATION FEE | | | | GROSS WEIGHT | | | | | | | | ANNUAL FEE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 150082 | 01 29 2003 | | | 4500 | | | | | | | | 40.00 |
| REG NO | DATE | | | | | | | | | | | |

NOTICE: THE LAW REQUIRES THAT THE REGISTRY SHALL BE NOTIFIED WITHIN 10 DAYS OF ANY CHANGE IN NAME OR ADDRESS

GROSS SALE PRICE
LESS TRADE ALLOWANCE          14495.00

AMOUNT OF TAX               359.90

DIFFERENT CHANGE

PENALTY CHARGE

TOTAL TAX DUE               359.90

TRANSFER FEE                15.00

LICENSE PLATES FEE

TITLE FEE                   25.00

MISCELLANEOUS FEE

RENEWAL FEE

REGISTRATION FEE

TOTAL REGISTRATION FEE      40.00

TOTAL FEES PAID           $399.90

| | REG NUMBER | PLATE TYPE | CUSTOMER IDENTITY NO. IF INDIVIDUAL | | REGISTRATION VALID THROUGH LAST DAY OF |
|---|---|---|---|---|---|
| | 150082 | 02 | 7113198 | | MARCH 2003 |

OWNER
DIANE F WALLACE
161 COURTNEY AVE
PAWTUCKET RI 02861

| YEAR | MAKE | MODEL | BODY TYPE | COLOR |
|---|---|---|---|---|
| 2000 | CHEVR | S10 | PC | GREY |

VIN
1GCCS195XY8211604

RESIDENCE ADDRESS (IF DIFFERENT FROM ABOVE)

029-842-1311



APPROVED
Charles F. Dolan

JAN   7 2003

RHODE ISLAND DIVISION
OF MOTOR VEHICLES

SERIAL #   K 002320

VALID ONLY WHEN DATED
AND STAMPED WITH OFFICIAL STAMP.



Exhibit L

04/03/03
@ 7:00 Pm.

Chevy S10 veichle picked up
by Paul Caianiello - shows
exterior paint and body to be in
good condition. Although front
bumper scratchs near license
plate were previously there,

Veichle pick up @ 161 Courtney
Ave, Pawtucket, RI @ Diane Wallace
residence,

x  Paul P. Caianiello Jr

x